**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

*Electronically Filed*

| | | |
|---|---|---|
| TERRI NAISER and JONNIE PHILLIPS, | ) | |
| On Behalf of Themselves and All Others | ) | |
| Similar Situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-00395-JHM-DW |
| | ) | |
| UNILEVER UNITED STATES, INC., LEK | ) | |
| INC., and CONOPCO, INC. d/b/a | ) | |
| UNILEVER HOME & PERSONAL CARE | ) | |
| USA, | ) | |
| Defendants. | ) | |

**DEFENDANT UNILEVER UNITED STATES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Unilever United States, Inc. ("Unilever") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (the "Complaint").

Plaintiffs Terri Naiser and Jonnie Phillips bring this putative class action "to seek redress for themselves and all others in the Commonwealth of Kentucky who purchased and/or used Suave Professionals Keratin Infusion 30 Day Smoothing Kit (the 'Treatment' or 'Product')." They present this Court with a variety of claims allegedly arising out of their use of the Product, which was an at-home treatment designed for use on certain kinds of hair. Disregarding the actual wording of the Product packaging and instructions attached to the Complaint, Plaintiffs contend that Unilever made false representations about the Product that misled them into purchasing and using it. In addition, they allege that the Product was defective and unreasonably

dangerous, and that as a result they suffered injuries including hair damage, hair loss and scalp injury.  Plaintiffs' Complaint seeks recovery of compensatory, punitive and statutory damages under theories of breach of warranty, violation of the Kentucky Consumer Protection Act, violation of the Magnuson-Moss Act, strict liability, negligence and/or gross negligence, and unjust enrichment.

As set forth below, each of Plaintiffs' claims fails to state a cause of action under Kentucky law.  Unilever therefore requests the dismissal of Plaintiffs' Complaint in its entirety.

### STATEMENT OF FACTS

Plaintiffs Naiser and Phillips allege that they are Kentucky residents who purchased the Product from retailers in Kentucky.  Compl. ¶¶ 14-15, 57, 59 (Doc. 1-2).  They claim that Unilever induced them to purchase the Product by representing through its marketing and packaging that "the Treatment was a Keratin-based smoothing treatment and not a toxic chemical relaxer; that its effects would last no longer than 30 days; that it contained no Formaldehyde; and that it was safe."  *Id.* ¶ 3.   Plaintiffs allege that these representations were false and further allege that the Product was "unreasonably dangerous, more dangerous than an ordinary consumer would expect without concomitant accurate information and warnings accompanying the Product."  *Id.* ¶ 112.

The exhibits attached to Plaintiffs' Complaint directly contradict Plaintiffs' characterizations.  The packaging and instructions attached as Exhibit B contain information and warnings that make clear that the Product is a chemical treatment that smooths and straightens hair using the same ingredients as a hair perming product.  Compl. Ex. B at 2, 6 (Doc. 1-1 and 1-

2).[1]    Indeed, the first sentence on one of the box side panels states: "This product contains thioglycolates, do not use if you have previously reacted to products containing thioglycolates, which are often found in hair perming products." *Id.* at 3.  The instructions similarly warn: "DO NOT USE THIS SMOOTHING TREATMENT IF: You suspect or know you are allergic to thioglycolic acid (commonly used in hair perming products)." *Id.* at 6.  The other side panel lists the ingredients of each step of the treatment, including chemicals such as ammonium thioglycolate, diammoniun dithiodiglycolate, sodium polyacrylate, C12-15 alkyl benzoate, hydrogenated polydeceine, ammonium hydroxide, potassium chloride and phosphoric acid.  *Id.* at 4.  The instructions also identified a number of "other important things to know," including instructions to "use in a well ventilated area," "wear protective gloves," avoid massaging into the scalp and rinse or remove product that accidentally contacts the skin.  *Id.* at 6.

Neither the Product packaging and instructions, nor the Product description attached to the Complaint as Exhibit A, describes the Product as "safe," "non-toxic" or "natural."  Compl. Exs. A and B.  To the contrary, the Product packaging and instructions make clear that the product is not safe and appropriate for all consumers.  The box side panel expressly warns consumers not to use the treatment if any one of a series of conditions is present, including scalp damage or irritation, permed or chemically-straightened hair, highlights or bleaching, treatment with hennas or color restorers, chemically relaxed or straightened hair, or dry, brittle or breaking hair.  Compl. Ex. B at 3.  The instructions contain virtually identical warnings.  *Id.* at 6.

---

[1]    The copies of the First Amended Complaint filed with this Court as exhibits to the Notice of Removal inadvertently excluded page 6 of Exhibit B.  *See* Doc. 1-2 (Exhibit 2 – Amended Complaint) and Doc. 1-5 (Jefferson Circuit Court file).  A complete copy of Exhibit B, including page 6, was filed with Plaintiffs' initial Complaint, which was also filed as an exhibit to the Notice of Removal.  *See* Doc. 1-1 at 35 (Exhibit 1 – Initial Complaint).  The copy of the First Amended Complaint that was served on Unilever also included a complete copy of Exhibit B.

The Product packaging further confirms that formaldehyde is not an ingredient in the product. *See* Compl. Ex. B at 4. The Product does contain a preservative called DMDM Hydantoin, which Plaintiffs describe as a "Formaldehyde-releaser" (*id.* ¶ 27), but Plaintiffs do not allege that DMDM Hydantoin in fact contains formaldehyde, that formaldehyde is released during the specific use at issue, or that they suffered any injury from formaldehyde. The exhibits also refute Plaintiffs' assertion that Unilever described the Product as Keratin-based, although the Product does contain Keratin in each of its three steps. Compl. Ex. B at 2, 4.

On May 8, 2012, Unilever initiated a recall of the Product by letter, as reported by the Food and Drug Administration. Compl. ¶ 38. Unilever explained that it recalled the Product "because of potential consumer misunderstanding of the product's suitability for certain hair conditions." *Id.* ¶ 37. While Plaintiffs claim that "some retailers continued to sell the Product after the recall," they concede that Unilever advised retailers "to immediately cease distribution of the Product and . . . send the Product back to Unilever." *Id.* ¶ 39.

**ARGUMENT**

**I.      LEGAL STANDARD.**

Under Rule 12(b)(6), dismissal of an action is appropriate if the plaintiff fails to make allegations that are "enough to raise a right to relief about the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, to survive a motion to dismiss, a Complaint must contain enough factual matter "to state a claim for relief that is plausible on its face." *Id.* at 570. Conclusory allegations unsupported by facts do not state a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where a plaintiff's allegations are inconsistent with the exhibits attached to the complaint, the exhibits control over the inconsistent allegations. *See Williams v. CitiMortgage,*

4

*Inc.*, 2012 WL 3834776, at *4 (6th Cir. Sept. 4, 2012) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (internal quotations omitted)). Furthermore, in assessing whether a complaint states a claim for relief, the Court appropriately disregards mere labels, conclusions and any "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Finally, because Plaintiffs assert a claim sounding in fraud, the Complaint must comply with the stringent pleading standards of Rule 9(b). Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A viable fraud claim must thus allege facts concerning "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012).

## II.   PLAINTIFFS CANNOT MAINTAIN A CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY.

Under Count I of the Complaint, Plaintiffs attempt to assert a claim for breach of express warranty. Plaintiffs lack standing to maintain this cause of action because they are not in privity with Unilever. Kentucky law requires a plaintiff to be in privity of contract with the defendant to maintain a claim for breach of warranty, whether express or implied. *See Waterfill v. Nat'l Molding Corp.*, 2007 WL 412819, 215 Fed. App'x 402, 405 (6th Cir. Feb. 7, 2007). Both plaintiffs allege that they purchased the Product from retail stores, not from Unilever. Compl. ¶¶ 57, 59. Accordingly, Plaintiffs Naiser and Phillips are not in privity with Unilever and cannot sustain a claim for breach of express warranty under Kentucky law.

Moreover, even if Plaintiffs could establish privity, their allegations under Count I of the Complaint fail to state a claim for relief. To maintain a cause of action for breach of express warranty, Plaintiffs must allege that (1) Unilever made express affirmations of fact or promises about the Product, (2) Plaintiffs relied on those statements when purchasing the Product such that they became a basis of the parties' bargain, and (3) the Product did not conform to those affirmations. *See* Ky. Rev. Stat. § 355.2-313; *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1291 (6th Cir. 1982). The Complaint here fails to allege any affirmation of fact or promise made by Unilever that was breached, or that Plaintiffs relied on any such representation when purchasing the Product.

The first alleged "warranty" that Plaintiffs identify is that the Product was "not a chemical relaxer." Compl. ¶ 78. That allegation is flatly contradicted by the Product packaging and instructions. They contain no such promise, and instead make clear that the Product is a hair straightener that uses the same chemicals as are used in hair perming to alter hair shape and texture. *See* Compl. Ex. B. Second, Plaintiffs claim that Unilever falsely affirmed and promised that the product would smooth their hair. *See* Compl. ¶ 78. While Unilever indeed used the term "smoothing" in its Product packaging, the exhibits attached to the Complaint also warn that the results of the treatment may vary. Compl. Ex. B at 2, 6. Plaintiffs thus fail to plead how, in this context, the word "smoothing" rose to the level of an affirmation of fact or promise. Read together with Unilever's express cautions concerning use of the Product, Plaintiffs cannot reasonably maintain that Unilever warranted that the Product would "smooth" their hair. At best, the language is non-actionable puffery. *See* Ky. Rev. Stat. § 355.2-313(2) ("[A] statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."); *see John F. Ruggles, Jr., Inc. v. Ventex Tech., Inc.*, 2011 WL 2971839, at *7 (E.D.

6

Ky. July 21, 2011) (citing representations by a vehicle manufacturer that a roof was "strong, light, leakproof" and its trucks were "rock-solid" as examples of commercial puffery).

Plaintiffs next assert that Unilever expressly warranted that the effects of the Product "would last no more than 30 days." Compl. ¶ 78. In fact, what the Product packaging states is that following use of the Product hair "will continue to be smoother up to 30 days." Compl. Ex. B at 2. That is not a warranty that the effects will not last longer than thirty days, and it is certainly not a warranty that the Product is not a chemical straightener or relaxer. The suggestion that the thirty day statement was somehow a warranty that the Product was "gentle" or "natural" (Compl. ¶ 6) is implausible, particularly when the Product packaging and instructions do not use either term, and instead disclose that the Product is a chemical hair straightener that uses the same chemicals as perming products to alter the texture and shape of hair. Finally, Plaintiffs do not allege that the smoothing effects of the Product, when applied in accordance with the instructions to hair types for which the Product is appropriate, last longer than thirty days, or that such extended smoothing would be unwelcome.

Plaintiffs also assert that Unilever expressly warranted that the Product was "safe." Compl. ¶ 78. Once again, the exhibits to the Complaint directly controvert Plaintiffs' allegation. The word "safe" does not appear anywhere in the Product packaging and instructions. *See* Compl. Ex. B. To the contrary, as discussed above, the Product packaging and instructions make abundantly clear that the Product is *not* safe for all hair types or all consumers. *See supra* at 2-3. The Product's instructions also include warnings to consumers to use the Product "in a well ventilated area," to "wear protective gloves," to avoid massaging the product into the scalp, and to rinse or remove any product that accidentally comes into contact with the skin. Compl. Ex. B at 6. All of these warnings and instructions belie any notion that the Product is "safe," "gentle,"

"natural," or "non-toxic" (Compl. ¶¶ 3, 6, 26) particularly when the Product packaging and instructions do not use any of those terms.

With respect to the alleged warranty that the Product contained "No Formaldehyde," Plaintiffs fail to plead facts showing that any such representation was false or that they suffered any injury as a result. Plaintiffs' allegation that the Product contains the preservative DMDM Hydantoin, a "Formaldehyde-releaser," does not make false the representation that the Product does not contain the chemical formaldehyde. *See* Compl. ¶ 27. Nor do Plaintiffs allege that formaldehyde is released when a consumer uses the Product.[2] In fact, the hair straightening component of the Product does not contain DMDM Hydantoin. That chemical is contained only in Step 3, the conditioner. *See* Compl. Ex. B at 4. Plaintiffs have not alleged that they suffered any injury as a proximate result of the inclusion of DMDM Hydantoin in the conditioner.[3]

Finally, Plaintiffs have failed to allege that they relied on any of the purported warranties such that they became a basis of the parties' bargain. *See Overstreet*, 669 F.2d at 1288 ("Reliance is an element of a cause of action for express warranty under Ky.Rev.Stat. § 355.2-313(1)(a)."). Plaintiff Naiser claims only that she was "*familiar* with Unilever's claims about the Treatment not containing Formaldehyde and being a 'smoothing' Product whose effects would last no longer than 30 days." Compl. ¶ 57 (emphasis added). Plaintiff Phillips asserts even less knowledge of the purported warranties, stating only that she was aware of the claims that the

---

[2] Notably, the internet article Plaintiffs cite concerning companies that "disguise" formaldehyde in their hair straightening products (Compl. ¶ 28) does not mention either the Product or DMDM Hydantoin. *See* http://www.ewg.org/hair-straighteners/our-report/hair-straighteners-that-hide-formaldehyde (last visited April 5, 2013).

[3] Nor could Plaintiffs truthfully allege that the DMDM Hydantoin in the conditioner actually posed a danger to consumers, given that the chemical is a common ingredient in hair-care products that are used every day by millions of consumers without incident.

Product was a smoothing treatment and lasted no more than 30 days. *Id.* ¶ 59. There is no allegation that Plaintiffs read any of the other alleged warranties or that they actually *relied* on any specific statement in deciding to purchase and use the Product. As a result, Plaintiffs' claims fail to plead the reliance necessary to state a claim under Kentucky law.

Because the Complaint fails to allege either an affirmation of fact or promise that was breached or any resulting injury to Plaintiffs, it fails to state a claim for breach of express warranty.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT.

Plaintiffs similarly lack standing to assert a claim under the Kentucky Consumer Protection Act (the "KCPA") because they are not in privity with Unilever. To maintain a private cause of action under the Act, a plaintiff must be in privity of contract with the defendant.[4] *See Ky. Laborers Dist. Council Health and Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 772-73 (W.D. Ky. 1998) (noting that Ky. Rev. Stat. § 367.220, which provides consumers with a private cause of action, "requires that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act"). Accordingly, Count II should be dismissed.

Moreover, Plaintiffs fail to adequately plead the elements of a claim under the KCPA. To assert a cause of action under the Act, Plaintiffs must allege that Unilever engaged in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," and that such practices caused Plaintiffs' harm. *See* Ky. Rev. Stat. §§ 367.170,

---

[4] Though an exception to the privity requirement exists where a manufacturer provides an express warranty to the consumer (*see Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992)), Plaintiffs' allegations of an express warranty fail for the reasons discussed in Part II, *supra.*

367.220; *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 698 (W.D. Ky. 2010).   Because Plaintiffs' claim sounds in fraud, the heightened pleading standard of Rule 9(b) applies.   *See* Compl. ¶¶ 86, 90 (alleging that Unilever used fraud in its marketing and "has continued to defraud consumers" through its release agreements); *Hollon v. Consumer Plumbing Recovery Ctr.*, 2006 WL 1360805, at *5 (E.D. Ky. May 15, 2006) (dismissing KCPA claims based on the fraudulent acts of the defendant for failing to plead fraud with particularity).

Plaintiffs allege that Unilever deceived consumers by using "fraud, false promises and misrepresentations" and concealing material facts in its advertisements and packaging.  Compl. ¶¶ 86-87.  Yet Count II of Plaintiffs' Complaint fails to identify any specific representation made by Unilever that was false, misleading or otherwise deceptive.  This failure to identify *any* fraudulent statement by Unilever lacks the specificity needed to survive dismissal under *Twombly* and *Iqbal*, let alone the level of particularity required under Rule 9(b).

To the extent that Plaintiffs base their KCPA claim on the "advertisements and packaging" attached as exhibits to the Complaint, their claim still fails.  The exhibits demonstrate that none of Unilever's statements made in marketing the Product were untrue, and any allegations to the contrary are trumped by the controlling language in the attachments.  *See Wintermute v. Discover Card Servs., Inc.*, 2008 WL 1772758, at *1 (W.D. Ky. April 16, 2008) (dismissing plaintiff's KCPA claim where plaintiff's allegations were inconsistent with the exhibits attached to the complaint).  Furthermore, Plaintiffs fail to plead a causal connection between Unilever's allegedly deceptive marketing and Plaintiffs' claimed damages.  The Complaint merely alleges generally that Plaintiffs "purchased and used the Treatment" as a "proximate result of the above-described Consumer Protection Act violations."  *See* Compl. ¶ 92.

This "formulaic recitation of the elements" is insufficient under the federal pleading requirements. *Twombly*, 550 U.S. at 555; *see* Fed. R. Civ. P. 9(b).

Finally, Plaintiffs allege that Unilever defrauded consumers by obtaining signed releases that contained "unfair and oppressive" conditions by providing "false and/or incomplete information to unrepresented consumers." Compl. ¶ 90-91. Yet the Complaint fails to identify any false statements made by Unilever in obtaining a release or any specific terms of the purported releases that were misleading. Moreover, the Complaint does not allege that either Naiser or Phillips even signed such an agreement.

For these reasons, Count II should be dismissed.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MAGNUSON-MOSS ACT.

Count III of Plaintiffs' Complaint alleges a violation of the Magnuson-Moss Act. Plaintiffs rely entirely on their earlier allegations of "Unilever's breach of warranties as set forth above." Compl. ¶ 98. Those allegations fail to state a claim under the Act.

To state a claim for breach of a written warranty under the Act, a plaintiff must identify a "written affirmation of fact or written promise made in connection with the sale of a consumer product [that] affirms or promises that such material or workmanship is defect free or will meet a specified level of performance." 15 U.S.C. § 2301(6). The statements cited in Count I, on which Plaintiffs wholly rely, are product descriptions, not promises of a defect-free product or a level of performance over a specified period. *See supra* at 6-8. Moreover, this Court has recognized that the elements of a Magnuson-Moss claim largely "mirror those required for state law warranty claims." *See Peacock v. Damon Corp.*, 458 F. Supp. 2d 411, 417 (W.D. Ky. 2006). Plaintiffs here rely explicitly and entirely on a state law warranty claim as the basis for Count III. *See*

11

Compl. ¶ 98.   Accordingly, Plaintiffs' Magnuson-Moss claim fails for the same reasons as

Plaintiffs' express warranty claim.   Count III therefore should be dismissed.

## V.        THE COMPLAINT FAILS TO STATE A CLAIM FOR STRICT LIABILITY.

To state a claim for strict liability, Plaintiffs must show that the Product was in a

defective condition unreasonably dangerous to the user, and that it caused Plaintiffs' injury.   *See*

*Waterfill*, 2007 WL 412819, 215 Fed. App'x at 404; *Shea v. Bombardier Recreational Prods.,*

*Inc.*, 2012 WL 4839527, at *3 (Ky. Ct. App. Oct. 12, 2012) ("Under any theory of strict liability,

the plaintiff must establish causation.").   Plaintiffs allege, in conclusory terms, that the Product

was defective in design and failed to contain adequate warnings.   *See* Compl. ¶¶ 110, 112-114.

Their factual allegations, however, are insufficient to establish either a design defect or an

informational defect (i.e. failure to warn) under Kentucky law.   Accordingly, Count V should be

dismissed.

### A.        The Complaint Contains Insufficient Allegations to Establish a Design Defect.

Plaintiffs assert that the Product contained an "inherent defect" that "caused significant

hair loss and scalp burns upon proper application."   Compl. ¶ 53.   Yet Plaintiffs' Complaint fails

to allege *how* the Product is defective.   Rather, Plaintiffs present their claim as essentially a *res*

*ipsa loquitur* – Plaintiffs' hair was damaged, therefore the Product must be defective.   That kind

of allegation is insufficient under *Twombly* and *Iqbal*.   *See, e.g.*, *Mills v. Bristol-Myers Squibb*

*Co.*, 2011 WL 3566131, at *1-2 (D. Ariz. Aug. 12, 2011) (allegations that drug caused plaintiff

to begin hemorrhaging within days of her initial usage were insufficient to state a claim where

she failed to plead how the drug was defective); *Altman v. HO Sports Co., Inc.*, 2009 WL

4163512, at *1, 8 (E.D. Cal. Nov. 23, 2009) (allegations that plaintiff was injured while using

defendant's wakeboard bindings failed to state a claim absent factual allegations identifying "what aspects of the [bindings] makes their design . . . defective").

The closest Plaintiffs come to identifying how the Product is defective is their allegation that the Thioglycolic Acid in the Product rendered it dangerous. *See* Compl. ¶ 1. In the same breath, however, Plaintiffs acknowledge that Thioglycolic Acid is also the active ingredient in other hair products, including some hair perming solutions. *See id.* While they claim that "the pH level and concentration" of the acid in the Product made it unsafe, they do not identify the levels of thioglycolates in the Product, how that compares to other hair products containing the same ingredient, or in what amounts it is purportedly unsafe for use. *See id.* ¶ 47. Nor do Plaintiffs allege that the thioglycolates in the Product actually caused Plaintiffs' injuries. Instead, they rely on "naked assertions" that fail to meet the pleading requirements to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Furthermore, Kentucky law requires a plaintiff to prove that a feasible, safer alternative design was available to the manufacturer at the time that it made the Product. *See Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004). Plaintiffs have not alleged the existence of a feasible, safer alternative here. Their strict liability claim for a design defect should therefore be dismissed.

**B.    The Complaint Contains Insufficient Allegations to Establish a Warning Defect.**

Plaintiffs also claim that the Product was defective due to "inadequate warning." Compl. ¶ 113. To state a claim for failure to warn in Kentucky, Plaintiffs must allege that Unilever had a duty to warn of the alleged dangers involved in using the Product, that lack of an adequate

warning made the Product defective and unreasonably dangerous, and that the lack of an adequate warning proximately caused Plaintiffs' injuries. *See Shea*, 2012 WL 4839527, at *3.

Plaintiffs' Complaint does not meet these requirements. The exhibits to the Complaint demonstrate that Unilever provided substantial warnings of dangers of which it was aware, including warnings that described the risks of hair damage and scalp injury about which Plaintiffs complain. *See supra* at 2-3; Compl. Ex. B. Furthermore, the exhibits show that the Product contained particular warnings related to thioglycolic acid. *See id.* Plaintiffs do not explain why these warnings were inadequate or how they rendered the Product unreasonably dangerous. Nor do they allege how the warnings should have been different. Finally, they do not allege that their alleged injuries were proximately caused by the purportedly inadequate warnings.

## VI.    THE COMPLAINT FAIL TO STATE A CLAIM FOR NEGLIGENCE AND/OR GROSS NEGLIGENCE.

Plaintiffs' claim for negligence and/or gross negligence fails for the same reasons as their strict liability claims. To state a claim for negligent product liability, a plaintiff must allege a duty owed by the manufacturer, a breach of that duty, and damages proximately caused by that breach. *See Shea*, 2012 WL 4839527, at *4. Like a claim for strict liability, a claim for negligence requires the plaintiff to establish that the product was defective and the legal cause of the injury. *See id.* To rise to the level of gross negligence, the standard is even higher: the plaintiff must show ordinary negligence accompanied by "wanton or reckless disregard for the lives, safety, or property of others." *Dortch v. Fowler*, 2007 WL 2757139, at *1 (W.D. Ky. Sept. 20, 2007).

Plaintiffs' negligence claims rely on the same factual assertions as its strict liability cause of action. As explained above, those allegations fail to show that the Product was defective. Plaintiffs have also failed to allege that Unilever acted with the malice or willfulness required to state a claim for gross negligence.[5] Consequently, Plaintiffs' negligence causes of action, like their strict liability count, fail to state a claim and should be dismissed. *See Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996) (finding it legally inconsistent for jury to find no defect for purposes of strict liability but a defect for purposes of negligence).

## VII.    PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR UNJUST ENRICHMENT.

Under Kentucky law, the doctrine of unjust enrichment is inapplicable where a specific contract exists. *See Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, 2010 WL 2696278, at *14 (Ky. Ct. App. July 9, 2010). Accordingly, if Plaintiffs maintain that their relationship with Unilever is governed by the express warranties alleged in Count I, then the unjust enrichment allegations fail to state a claim and Count VI should be dismissed.

Furthermore, the unjust enrichment claim should be dismissed because the Complaint fails adequately to plead a cause of action. To state a claim for unjust enrichment in Kentucky, a plaintiff must allege three elements: "(1) benefit conferred upon defendant by plaintiff at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Pixler v. Huff*, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011). Plaintiffs base their unjust enrichment claim on allegations that Unilever "manufactured a defective Product" and "misrepresented the nature of the Product, misrepresented its ingredients, and knowingly marketed and promoted a dangerous and defective

---

[5] Moreover, Unilever does not concede that Kentucky law even recognizes a tort of gross negligence, separate and apart from ordinary negligence. Instead, the case law suggests that gross negligence is only a consideration when determining punitive damages. *See Dortch*, 2007 WL 2757139, at *3.

Product." Compl. ¶ 119. As explained above, the Complaint does not plead facts that support

these conclusions, and contradicts them with the words of the exhibits. *See supra* at 10-14.

**CONCLUSION**

Because Plaintiffs' Complaint fails to satisfy the requirements for pleading each of its

alleged claims, Unilever respectfully urges that the Court dismiss the pending action.

Respectfully submitted,

/s/ Charles M. Pritchett
Charles M. Pritchett
Christopher Johnson
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
(502) 589-5400
cpritchett@fbtlaw.com
cjohnson@fbtlaw.com
*Counsel for Defendant Unilever United States, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system and also served by depositing the same in the United States Mail, postage prepaid, on the 18th day of April, 2013 to:

Richard A. Getty
Danielle H. Brown
THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, KY 40507

Peter Safirstein
MORGAN & MORGAN, P.C.
28 W. 44th Street, Suite 2001
New York, NY 10036

Christopher S. Polaszek
MORGAN & MORGAN, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602

Jana Eisinger
LAW OFFICE OF JANA EISINGER, PLLC
11 West Prospect Avenue
Mount Vernon, NY 10550

*Counsel for Plaintiffs*

/s/ Charles M. Pritchett
*Counsel for Defendant Unilever United States, Inc*