# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

CIVIL ACTION NO. 3:13-CV-00395-JHM

TERRI NAISER and JONNIE PHILLIPS,
On Behalf of Themselves and
All Others Similarly Situated                                   PLAINTIFFS

V.

UNILEVER UNITED STATES, INC.,
LEK INC., and CONOPCO, INC., d/b/a
UNILEVER HOME & PERSONAL CARE USA                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Terri Naiser and Jonnie Phillips, on behalf of themselves and all others similarly situated (collectively, the "Plaintiffs"), bring this putative class action against Unilever United States, Inc. ("Unilever"); LEK Inc. ("LEK"); and Conopco, Inc., d/b/a Unilever Home & Personal Care USA ("Conopco"). Plaintiffs' action arises out of their purchase and use of a hair product which was marketed and sold as Suave® Professionals Keratin Infusion 30 Day Smoothing Kit. (See Am. Compl. [DN 1-2] ¶ 1.)

Presently, this matter is before the Court on Defendant Unilever's Motion to Dismiss the First Amended Complaint [DN 8] and Defendant Conopco's Motion to Dismiss the First Amended Complaint [DN 9]. Also before the Court is Plaintiffs' Motion for Oral Argument [DN 16] and their Motion for Leave to File a Supplemental Memorandum of Law in Opposition to the Motions to Dismiss [DN 23]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Unilever's motion to dismiss [DN 8] is **DENIED**, Conopco's motion to dismiss [DN 9] is **DENIED**, and Plaintiffs' motion for oral argument [DN 16] is **DENIED**. The Court also holds that Plaintiffs' motion for leave [DN 23] is **GRANTED**.

# I. BACKGROUND

Plaintiffs are Kentucky residents who purchased a hair product which was marketed and sold as Suave® Professionals Keratin Infusion 30 Day Smoothing Kit. They purchased this product from various retail stores in Kentucky. (First Am. Compl. [DN 1-2] ¶¶ 14-15.) Plaintiffs maintain that they purchased the product due to Unilever's representations that it "was a Keratin-based smoothing treatment and not a toxic chemical relaxer; that its effects would last no longer than 30 days; that it contained no Formaldehyde; and that it was safe." (Id. ¶ 3.) Plaintiffs assert that these representations were false and that the product is actually a dangerous depilatory agent that contains an ingredient, or combination of ingredients, which causes significant hair loss and other adverse effects upon proper application. (Id. ¶ 3.) Plaintiffs allege that before, or almost immediately upon, introducing the product in late 2011, Unilever knew that consumers had been complaining that the product caused hair loss, scalp burns, and other adverse effects. (Id. ¶ 8.) But Plaintiffs contend that despite these complaints, Unilever failed to warn the product's consumers that they were at risk. Plaintiffs allege that there was no warning on the product's packaging or labels, on Unilever's websites, or on any other marketing materials. (Id. ¶ 7.)

In or about April 2012, Plaintiff Naiser purchased the product for approximately $10.00 from a Target store in Louisville, Kentucky. (Id. ¶ 57.) She alleges that she "expected to be purchasing a short-term 'smoothing' conditioner and not a harsh chemical relaxer . . . ." (Id.) According to Plaintiff Naiser, upon proper application of the product, her hair loosened from its tight curls to being completely straight. Thereafter, she noticed she was experiencing significant hair loss and breakage. Plaintiff Naiser alleges that she has spent approximately $2,000.00 on haircuts and conditioning products in an effort to restore the damage to her hair. (Id. ¶ 58.)

In or about June 2012, Plaintiff Phillips purchased the product for approximately $15.00 from a Rite Aid store in Calhoun, Kentucky. (Id. ¶ 59.) She alleges that she was familiar with Unilever's claims about the product being a "smoothing" treatment whose effects would last no longer than 30 days. (Id.) According to Plaintiff Phillips, immediately upon proper application, the product began burning her scalp, leaving red patches on it. Plaintiff Phillips alleges that while the redness soon went away, her scalp remained tender for weeks. She also alleges that her hair began to fall out and break. (Id. ¶ 60.) Plaintiff Phillips states that she has spent hundreds of dollars on conditioners and treatments to try to restore her hair. (Id. ¶ 61.)

In May 2012, Unilever recalled the product, directing retailers to immediately remove the product from the shelves and send it back to Unilever. (Id. ¶ 9.) Plaintiffs maintain that despite this recall, Unilever continues to advise consumers that the product is safe, claiming that it was recalled due to consumer misunderstanding of the product's appropriate use and application. (Id. ¶¶ 9-10.) Plaintiffs have now filed the instant suit against Unilever, alleging that it manufactured, marketed, designed, promoted, or distributed an unreasonably dangerous, defective product. (Id. ¶ 16.) Plaintiffs have also named Conopco and LEK as Defendants, alleging that they manufactured or distributed the product. (Id. ¶¶ 17-18.) Plaintiffs assert three causes of action against Unilever: breach of express warranty, violation of the Kentucky Consumer Protection Act, and violation of the Magnuson-Moss Act. (See id. ¶¶ 75-98.) They also assert three causes of action against all the Defendants: negligence and/or gross negligence, strict liability, and unjust enrichment. (See id. ¶¶ 99-120.)

Unilever has filed a motion to dismiss Plaintiffs' first amended complaint under Fed. R. Civ. P. 12(b)(6). (See Mot. to Dismiss First Am. Compl. [DN 8].) Conopco has filed a similar motion, incorporating by reference the arguments set forth by Unilever. (See Mem. of Law in Supp. of Mot. to Dismiss [DN 9-1] 1.) The Court considers these motions below.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiffs' allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiffs must provide the grounds for their entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The plaintiffs satisfy this standard only when they "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the plaintiffs plead claims which sound in fraud, those claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, the Sixth Circuit requires the allegations to contain the 'time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Our Lady of Bellefonte Hosp., Inc. v. Tri–State Physicians Network, Inc., 2007 WL 2903231, at *6 (E.D. Ky. Sept. 27, 2007) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161–62 (6th Cir. 1993)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).

**III. UNILEVER'S MOTION TO DISMISS [DN 8] AND CONOPCO'S MOTION TO DISMISS [DN 9]**

**BREACH OF EXPRESS WARRANTY (COUNT I)**

In Count I of their Complaint, Plaintiffs allege that they formed a contract with Unilever at the time they purchased the product and that "[t]he terms of that contract include the promises and affirmations of fact made by Unilever" through its marketing, advertising, and packaging. (Am. Compl. [DN 1-2] ¶ 77.) Specifically, Plaintiffs allege that Unilever expressly warranted: (1) that the product "was a hair 'smoothing' product and not a chemical relaxer"; (2) that its effects "would last no more than 30 days"; and (3) that it "contained No Formaldehyde and was safe." (Id. ¶ 78.) Plaintiffs allege that Unilever breached these warranties since its statements about the product were false; the product did not conform to Unilever's affirmations and promises. (Id. ¶ 80.) According to Plaintiffs, they would not have purchased the product had they known its "true nature and the mis-statements regarding what the Product was and what it contained." (Id.)

Unilever has moved to dismiss Count I for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Unilever makes three arguments in this regard: (1) Plaintiffs have not identified any "affirmation of fact or promise" by Unilever that was not true; (2) Plaintiffs have not alleged that they relied on the purported warranties such that they became a basis of the parties' bargain; and (3) Plaintiffs were not in privity of contract with Unilever. (Def. Unilever's Mem. [DN 8-1] 5-9.) In support of its first argument, Unilever maintains that the exhibits to Plaintiffs' complaint (i.e. images of the product's packaging and instructions) contradict Plaintiffs' assertion that Unilever made false statements about the product. (Id.) The Court considers Unilever's arguments in turn.

**1. "Affirmation of Fact or Promise" by Unilever**

Express warranties in Kentucky are governed by K.R.S. § 355.2-313, which states that an express warranty is created where: (1) the seller makes an affirmation of fact or promise; (2) that

relates to the goods; and (3) becomes part of the basis of the bargain between the parties. K.R.S. § 355.2-313(1)(a). Further, any description of the goods that is made part of the basis of the parties' bargain creates an express warranty that the goods shall conform to that description. Id. § 355.2-313(1)(b). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." Id. § 355.2-313(2). Indeed, Kentucky law does not require a defendant to use specific warranty language for a plaintiff to assert a viable express warranty claim. See Overstreet v. Norden Labs., Inc., 669 F.2d 1286, 1290 (6th Cir. 1982) (applying Kentucky law and holding that the "language creating an express warranty need not contain special phrases or formal words . . . .").

"Every statement made by a seller, however, does not create an express warranty." Id. Instead, Kentucky law provides that a "statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." K.R.S. § 355.2-313(2). The Sixth Circuit has held that "the critical difference between puffing and fraud is that in the latter situation, the recipient of false information is in a position to reasonably rely on the assurances of the speaker." Operation King's Dream v. Connerly, 501 F.3d 584, 589 (6th Cir. 2007). The test is "whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment." Overstreet, 669 F.2d at 1290-91.

Unilever argues that Count I fails to state a claim since Plaintiffs have not identified any affirmation of fact or promise by Unilever which was not true. Plaintiffs respond that they have sufficiently pleaded an express warranty claim, as they have pleaded that Unilever made various affirmations of fact or promises to Kentucky consumers. In this regard, Plaintiffs identify three promises which Unilever allegedly made: (1) that the product was a "smoothing" product, (2)

that its effects would last "up to 30 days," and (3) that it contained no formaldehyde and was safe. (See Pls.' Mem. [DN 10] 9-12.) The Court considers each alleged warranty below.

*Product was a "Smoothing" Product, Not a Chemical Relaxer.* The first alleged warranty which Plaintiffs identify is that the product "was a hair 'smoothing' product and not a chemical relaxer." (Am. Compl. [DN 1-2] ¶ 78.) Unilever asserts that while it did use the term "smoothing" in the product's packaging, the language was at best "non-actionable puffery." (See Def.'s Mem. [DN 8-1] 6-7.) In support of this argument, Unilever highlights that the packaging states that the product's results may vary. (Id. at 6.) According to Unilever, this caution regarding the product's unpredictable results shows that Plaintiffs cannot reasonably believe that Unilever warranted that the product would "smooth" their hair. Instead, Unilever's statement that the product would "smooth" hair was simply an expression of its opinion about the product's effects. (See id.)

Further, Unilever argues that the product's packaging and instructions "make clear" that the product is a hair straightener which uses the same chemicals used in perming to alter hair shape and texture. Unilever argues that this contradicts Plaintiffs' assertion that it promised the product was not a "chemical relaxer." (Id.) Unilever highlights that the product's label states: the product "contains thioglycolates, do not use if you have previously reacted to products containing thioglycolates, which are often found in hair perming products." (Id., Ex. B, 3.) Further, Unilever highlights that the instructions state: "DO NOT USE THIS SMOOTHING TREATMENT IF: You suspect or know you are allergic to thioglycolic acid (commonly used in perming products)." (Id. at 6.) According to Unilever, these statements on the packaging and instructions prevent reasonable consumers from believing that the product was a simple conditioning treatment.

Plaintiffs respond that the language used on the packaging—"results may vary depending on hair type"—does not negate Unilever's smoothing promise. (See Pls.' Resp. [DN 10] 10.) In

support, Plaintiffs cite <u>F.T.C. v. QT, Inc.</u>, where a court held that the phrase "individual results may vary," shown in conjunction with various testimonials in an infomercial, was insufficient to negate the strong net impression conveyed by the other marketing. 448 F. Supp. 2d 908, 924 (N.D. Ill. 2006). Plaintiffs argue that Unilever's chosen language "merely warns that the Kit may be less effective on some hair types." (Pls.' Resp. [DN 10] 10.) Plaintiffs also argue that Unilever's statements that the product would "smooth" hair were not puffery. Instead, they were factual descriptions on which Kentucky consumers should have been expected to rely. (<u>Id.</u> at 10-11.)

The Court agrees with Plaintiffs that they have sufficiently pleaded that Unilever made an express warranty regarding the "smoothing" nature of the product. In this regard, the Court finds the rationale of <u>Reid v. Unilever United States, Inc.</u>, 2013 WL 4050194 (N.D. Ill. Aug. 7, 2013), persuasive. In that case, the Northern District of Illinois considered these exact arguments in a matter that is both factually and legally similar to this case.[1] In so doing, the court concluded that the plaintiffs had "sufficiently pleaded that Unilever's assertion that the Hair Treatment was a 'smoothing' product and not a chemical relaxer was an affirmation of fact or promise so as to survive the motion to dismiss." <u>Id.</u> at *9. The court held that it could not "conclude as a matter of law that Unilever's statements were mere puffery" since they did not "appear to be exaggerations of an opinion" and were "susceptible of being interpreted as factual statements." It further held that the identification of the product as a "smoothing" product could have conjured a specific factual idea about the product's effects in the mind of a typical consumer. <u>Id.</u> This Court agrees.

---

[1] The Court notes that while <u>Reid</u> is based on Illinois and Alabama law, those states have adopted § 2-313 of the Uniform Commercial Code. <u>See Reid</u>, 2013 WL 4050194, at *7. As such, Kentucky law is in accord. <u>See</u> K.R.S. § 355.2-313 (which also adopts § 2-313). <u>Reid</u> is thus persuasive authority. <u>See</u> <u>Ass'n of Cleveland Fire Fighters v. City of Cleveland</u>, 502 F.3d 545, 553 n.6 (6th Cir. 2007) (noting that "while analogous decisions from our sister circuits are not binding, we have repeatedly recognized their persuasive authority"); <u>Smith v. Astrue</u>, 639 F. Supp. 2d 836, 841 (W.D. Mich. 2009) (citing <u>United States v. Keith</u>, 559 F.3d 499, 505 (6th Cir. 2009)) (noting that courts in the Sixth Circuit "regularly discuss[] nonprecedential decisions when they can illuminate an issue").

As the <u>Reid</u> court correctly noted, "puffing" is generally defined as an "expression of an exaggerated opinion—as opposed to a factual misrepresentation—with the intent to sell a good or service." Black's Law Dictionary 1353 (9th ed. 2009). Here, Plaintiffs have sufficiently alleged that Unilever made a factual misrepresentation regarding the product's "smoothing" ability. The front of the product's packaging reads "**30 DAY SMOOTHING KIT**" in large bold, capital letters. (Ex. B [DN 1-2].) Below this statement, the packaging reads "**SMOOTHES YOUR STYLE**." Further, the back of the product's packaging states that using the product "leaves [hair] smooth, shiny, and manageable for up to 30 days." (<u>Id.</u>) This Court cannot conclude as a matter of law that these statements were exaggerated opinions. This is especially true because Kentucky law holds that "whether an express warranty was created is generally a question for the trier of fact." <u>Morgan v. Cabela's Inc.</u>, 788 F. Supp. 2d 552, 556 (E.D. Ky. 2011) (citing <u>Moore v. Mack Trucks, Inc.</u>, 40 S.W.3d 888, 891 (Ky. App. 2001)).

Therefore, the Court finds that Plaintiffs have sufficiently pleaded an affirmation of fact or promise concerning the product's "smoothing" nature to survive Unilever's motion to dismiss. Whether Unilever's identification of the product as having "smoothing" effects is actually an affirmation of fact or promise is a fact question that cannot be decided on this motion to dismiss. Similarly, there is a fact question as to whether the product's packaging made clear that the product was a chemical straightener as opposed to a conditioning product. <u>See</u> <u>Reid</u>, 2013 WL 4050194, at *9. At this point, it is only important that Plaintiffs have sufficiently pleaded that an affirmation of fact or promise was made. "The trier of fact must determine whether the circumstances necessary to create an express warranty are present in a given case." <u>Overstreet</u>, 669 F.2d at 1290.

*Effects Last No Longer than 30 Days.* The second alleged warranty that Plaintiffs identify is that the product's effects will last no more than thirty days. (Am. Compl. [DN 1-2] ¶ 78.) This

alleged warranty is based on the product's packaging, which identifies the product as a "30 Day Smoothing Kit." (Ex. B [DN 1-2].) The packaging also states that hair "will begin to return to its normal texture and shape over time but will continue to be smoother **up to 30 days**." (<u>Id.</u>) (emphasis added). While Unilever argues that this is not a warranty that the product's effects will cease after 30 days, (Def.'s Mem. [DN 8-1] 7), Plaintiffs contend that "the plain meaning of the words indicates there is a limit of 30 days for the Product's effects." (Pls.' Resp. [DN 10] 11.)

With respect to this issue, <u>Reid</u> again offers guidance. In that case, the court considered these exact arguments and held that the plaintiffs had "sufficiently pleaded that the description of the Hair Treatment as one that would 'last up to 30 days' rose to the level of an affirmation of fact or promise so as to survive the motion to dismiss their breach of express warranty claim." 2013 WL 4050194, at *9. In so holding, the court noted that "whether a statement is merely the expression of an opinion or a statement of fact is a question of fact that cannot be decided on a motion to dismiss." <u>Id.</u> The court also noted that other courts "have not hesitated to find that a warranty has been created when a seller uses language in product brochures to suggest that a product will perform up to certain nominal values." <u>Id.</u> (citing cases).

Based on this rationale, this Court similarly finds that Plaintiffs have sufficiently pleaded an affirmation of fact or promise regarding the length of time that the product's effects might last to survive Unilever's motion to dismiss. Thus, the Court finds that it would be improper to decide this fact question on a motion to dismiss.

*Product Contained No Formaldehyde and was Safe.* The third alleged warranty which Plaintiffs identify is that the product "contained No Formaldehyde and was safe." (Am. Compl. [DN 1-2] ¶ 78.) Unilever makes two primary arguments with respect to this alleged warranty.

First, Unilever argues that even if the "No Formaldehyde" statement constitutes a warranty, Plaintiffs have failed to adequately allege that Unilever breached it because "formaldehyde is not an ingredient in the product." (Def.'s Mem. [DN 8-1] 4.) In this regard, Unilever contends that Plaintiffs do not "allege that formaldehyde is released when a consumer uses the Product." (Id. at 8.) Further, Unilever contends that Plaintiffs' allegation that the product contains a chemical that is known to release formaldehyde "does not make false the representation that the Product does not contain the chemical formaldehyde." (Id.)

Second, Unilever argues that the word "safe" does not appear anywhere on the product's packaging or instructions. To the contrary, the packaging and instructions indicate that the product is **not** safe for all hair types. (See id. at 7.) In this respect, Unilever points out the product's various warnings—including the warnings to use the product in a well-ventilated area, to wear protective gloves, to avoid massaging the product into the scalp, and to rinse or remove any product that comes into contact with the skin. (Id.) Unilever asserts that these warnings belie any notion that the product is "safe."

The Court finds, however, that Unilever's arguments fail. As noted in Reid, "Plaintiffs have alleged enough facts to state a plausible claim for relief on the basis that Unilever breached an express warranty that the Hair Treatment did not contain any formaldehyde." 2013 WL 4050194, at *10. In this case, as in Reid, Plaintiffs have alleged that Unilever's product contains "DMDM Hydantoin, a chemical that is known as a 'Formaldehyde-releaser.'" (Am. Compl. [DN 1-2] ¶ 27.) In addition, Plaintiffs have alleged that formaldehyde-releasers "release amounts of Formaldehyde over time" and that "[a]n average consumer reviewing the Unilever representation that the Treatment contains 'No Formaldehyde' would not expect that it would contain a chemical known to release Formaldehyde upon use or application." (Id. ¶¶ 27, 29.) This Court agrees with

Reid that "[p]lacing language that indicates the absence of formaldehyde in bold, all capital letters, on the front and back of the Hair Treatment's packaging would suggest to the reasonable consumer the absence of the offending chemical during use of the Hair Treatment." 2013 WL 4050194, at *10. Along these same lines, the Court also finds that Plaintiffs have alleged sufficient facts indicating that Unilever misled consumers into thinking the product was safe. The Court thus holds that Plaintiffs have sufficiently pleaded an affirmation of fact or promise to survive Unilever's motion to dismiss. See Overstreet, 669 F.2d at 1290 (recognizing that a "catalog description or advertisement may create an express warranty in appropriate circumstances").

### 2. Basis of Parties' Bargain

The Court's holding that Plaintiffs have sufficiently alleged express warranties, however, does not end the inquiry. Unilever also maintains that Plaintiffs have failed to allege that any of the purported warranties became a basis of the parties' bargain. Under Kentucky law, "[r]eliance is an element of a cause of action for express warranty . . . ." Overstreet, 669 F.2d at 1288 (citing K.R.S. § 355.2-313(1)(a)). Unilever argues that Plaintiffs' claims must be dismissed since there "is no allegation that Plaintiffs read any of the other alleged warranties or that they relied on any specific statement in deciding to purchase and use the Product." (Def.'s Mem. [DN 8-1] 9.)

The Court finds, however, that Plaintiffs have sufficiently pleaded that they considered the alleged warranties to be a basis of their bargain. Plaintiffs have alleged that "[b]ased on Unilever's representations, Plaintiff Naiser expected to be purchasing a short-term 'smoothing' conditioner and not a harsh chemical relaxer which contained the same active ingredient that is used in hair removal products. Plaintiff Naiser was exposed to and familiar with Unilever's claims about the Treatment not containing Formaldehyde and being a 'smoothing' Product whose effects would last no longer than 30 days." (Am. Compl. [DN 1-2] ¶ 57.) Plaintiffs have

also alleged that Plaintiff Phillips was "familiar with Keratin-based hair treatments and saw ads for the Product which offered it as a good value compared to expensive salon Keratin-based treatments. Plaintiff Phillips was exposed to and familiar with Unilever's claims about the Treatment being a 'smoothing' Product whose effects would last no longer than 30 days." (Id. ¶ 59.) Further, Plaintiffs have alleged that they would not have bought the product had they known its "true nature and the mis-statements regarding what the Product was and what it contained." (Id. ¶ 80.) The Court finds that these allegations are sufficient allegations of reliance. Plaintiffs have sufficiently pleaded that they relied on Unilever's alleged warranties.

### 3. Privity of Contract

Again, the analysis does not end here. The Court must address Unilever's argument that Plaintiffs lack standing to assert their express warranty claim because they are not in privity of contract with Unilever. Unilever argues that Plaintiffs have not satisfied Kentucky's privity requirement since they have alleged that they purchased the product from retailers. (Am. Compl. [DN 1-2] ¶¶ 57, 59). Plaintiffs counter that they have satisfied the requirement since Unilever intended Kentucky consumers to be the beneficiaries of its warranties. (Pls.' Mem. [DN 10] 13-15.)

As a general rule, Kentucky law requires a plaintiff to be in privity of contract with a defendant to maintain a breach of warranty claim. See Waterfill v. Nat'l Molding Corp., 215 Fed. App'x 402, 405 (6th Cir. 2007) (holding that under Kentucky law, "claims for breach of express or implied warranties may proceed only where there is privity between the parties"). The statute which is typically cited for Kentucky's privity requirement is K.R.S. § 355.2-318. It states:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the

> goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

K.R.S. § 355.2-318 (adopting Alternative A to the Uniform Commercial Code's § 2-318). Plaintiffs do not dispute that Kentucky courts have interpreted this statutory language to require privity for breach of warranty actions. (See Pls.' Mem. [DN 10] 13 (citing Williams v. Fulmer, 695 S.W.2d 411 (Ky. 1985)).) However, Plaintiffs argue that Unilever created privity in favor of them since Kentucky consumers were the intended beneficiaries of its express warranties. (Id. at 13-14.)

Plaintiffs rely heavily on Levin v. Trex Co., Inc., 2012 WL 7832713 (W.D. Ky. Mar. 5, 2012) (applying Kentucky law), in support of their position. In Levin, a manufacturer of decking material offered a written warranty with its product. This warranty expressly stated that it gave "specific legal rights" to any "individual residential homeowner" purchasing the manufacturer's product. Id. at *2. The manufacturer sold its product exclusively through distributors and retailers. Id. at *1. Thus, when a homeowner later sued the manufacturer for breach of express warranty, the manufacturer argued that the homeowner had no standing. The manufacturer raised the same argument that Unilever raises here: namely, that Kentucky requires privity in warranty actions and there was no privity since the product was purchased from a distributor or retailer. Id.

In considering this argument, the court began by recognizing that "Kentucky has declined to entirely abolish the privity requirement for breach of warranty claims." Id. at *3 (citing Williams, 695 S.W.2d at 415). However, the court went on to explain that "Kentucky courts have not been faced with facts . . . where the manufacturer has expressly made warranties directly to the intended consumer of the product." Id. The court then considered several cases where courts in other jurisdictions have allowed warranty actions despite the fact that the parties were not in a direct buyer-seller relationship. See, e.g., Randy Knitwear, Inc. v. Am. Cyanamid Co., 181 N.E.2d 399 (N.Y. 1962) (finding that an advertising campaign aimed at the product's end consumers

was an actionable warranty); _In re_ Sony Vaio Comp. Notebook Trackpad Litig., 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010) (holding that despite the rule requiring privity in a warranty action, "a plaintiff may maintain an implied warranty claim against a manufacturer when a plaintiff is a third party beneficiary of a contract between the manufacturer, [defendant], and a third party").

Based on these cases, and based on the fact that at least one Kentucky court has allowed a breach of warranty action when the parties were not in a direct buyer-seller relationship, see Williams v. Volvo-White, 2003 WL 22681457, at *3 (Ky. App. Nov. 14, 2003) (holding that a subsequent purchaser could have privity with the defendant seller where an agreement existed as to various terms of warranties and an assignment of rights occurred), the Levin court concluded that the homeowner could maintain an express warranty action against the manufacturer. 2012 WL 7832713, at *3. This holding was based largely on the homeowner's position as the warranty's expressly intended beneficiary. Id. Plaintiffs maintain that a similar conclusion is warranted here because they were the directly intended beneficiaries of Unilever's express warranties.

In response, Unilever contends that Plaintiffs' reliance on Levin is misplaced. According to Unilever, Levin's holding is narrow; it is limited to situations where warranties expressly state that they run directly to the intended consumers. Unilever argues that Levin does not hold that consumers can sue a manufacturer for breach of warranty any time an express statement is made on a product's packaging. Instead, a plaintiff can only maintain a breach of warranty action in the absence of a direct buyer-seller relationship when a "manufacturer's written warranty expressly stated that its warranty ran directly to the intended consumer . . . ." See id. The Court finds, however, that the rationale underlying Levin's holding is applicable to the facts of this case.

As the Levin court noted, Kentucky courts have not considered any cases involving direct representations to consumers. Id. The most recent case from the Kentucky Supreme Court which addressed the privity issue did so in the context of an implied warranty claim. See Compex Int'l

Co., Ltd. v. Taylor, 209 S.W.3d 462 (Ky. 2006) (affirming a trial court's dismissal of an implied warranty claim against the manufacturer of an allegedly defective chair because the claim was brought by a plaintiff who purchased the chair from a K-Mart store). Further, the only case cited by Unilever did not deal with a scenario where a manufacturer made specific, express promises to a product's intended consumers. See Waterfill, 215 Fed. App'x at 403 (analyzing a general "warranty that the buckle was merchantable and fit for the ordinary purposes for which such a product is used"). Thus, this Court may consider how other jurisdictions have dealt with such promises. See Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir. 1985) (stating that where a state's highest court has not addressed the issue, a federal court may consider decisions from other jurisdictions).

Since "many courts, relying on guidance from official commentary from the U.C.C., have held that privity is not required where manufacturers make representations directly to the intended consumers of their products," Levin, 2012 WL 7832713, at *3, this Court holds that Plaintiffs' express warranty action may continue here. The Court anticipates that Kentucky state courts would hold that an express warranty action can be maintained in cases such as this, where Unilever's alleged written, express warranties were clearly intended for the product's consumers. See Gooch v. E.I. Du Point de Nemours & Co., 40 F. Supp. 2d 863 (W.D. Ky. 1999) (not discussing the privity requirement, but applying Kentucky law and allowing an express warranty action by a consumer against a manufacturer where no buyer-seller relationship existed but the consumer relied on warranties that were made by the manufacturer on the product's label).

The Court notes that while the warranty in Levin is distinguishable in some respects from the alleged warranties in this case—because it expressly identified the intended beneficiary (by stating that the warranty ran to the "individual residential homeowner")—the warranties are of a

similar nature. In this case, while the alleged warranties do not expressly state the identity of the intended beneficiary, it is clear that any alleged warranty was certainly intended for those who would purchase and use the hair product. Unilever would not have intended to direct any express warranties to the retail stores selling the product; the stores would not be the slightest bit concerned with the product's effects or the ingredients contained therein. Therefore, because Plaintiffs have sufficiently pleaded that Unilever made direct representations to consumers, the Court finds that their express warranty claim survives Unilever's motion to dismiss. The motion is **DENIED** as to Plaintiffs' express warranty claim in Count I.

### VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT ("KCPA") (COUNT II)

In Count II of their Complaint, Plaintiffs allege that Unilever violated the KCPA through its advertising and packaging by using "unconscionable commercial practices, deception, fraud, false promises and misrepresentations . . . in connection with the marketing of [its product]." (Am. Compl. [DN 1-2] ¶ 86.) The KCPA "is remedial legislation enacted to give consumers broad protection from illegal acts." Arnold v. Microsoft Corp., 2000 WL 36114007, at *7 (Ky. Cir. Ct. July 21, 2000) (citing Stevens v. Motorists Mut. Ins. Co., 759 S.W.2d 819, 821 (Ky. 1988)).

Unilever argues that Count II must be dismissed under Fed. R. Civ. P. 12(b)(6) because: (1) Plaintiffs have failed to adequately plead the elements of a KCPA claim; and (2) Plaintiffs lack standing to assert the claim because they are not in privity with Unilever. (Def.'s Mem. [DN 8-1] 9.) In response, Plaintiffs argue that they have sufficiently pleaded the elements of a KCPA claim. Further, they argue that: (1) the privity requirement does not apply because they are "members of the protected class of persons covered by the KCPA"; (2) even if the requirement does apply, privity exists because Unilever "created a third-party beneficiary status in Kentucky consumers"; and (3) promissory estoppel prevents Unilever from claiming lack of privity. (Pls.' Resp. [DN 10] 22.) The Court considers these arguments in turn.

### 1. Elements of a KCPA Claim

To assert a KCPA cause of action, Plaintiffs must allege that Unilever engaged in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," K.R.S. § 367.170(1), and that such practices caused Plaintiffs harm. Morris Aviation, LLC v. Diamond Aircraft Indus., Inc., 730 F. Supp. 2d 683, 698 (W.D. Ky. 2010). In this case, Plaintiffs have alleged that Unilever deceived consumers by using "fraud, false promises and misrepresentations" and by concealing material facts in its advertisements and packaging. (Am. Compl. [DN 1-2] ¶¶ 86-87.) Unilever argues that despite this allegation, Plaintiffs' claim still must be dismissed since their complaint "fails to identify any specific representation made by Unilever that was false, misleading, or otherwise deceptive." (Def.'s Mem. [DN 8-1] 10.) Unilever proposes that this failure to identify a specific representation means that Plaintiffs' complaint lacks the specificity needed to survive dismissal under Fed. R. Civ. P. 9(b).

In addition, Unilever maintains that to the extent that Plaintiffs base their KCPA claim on its advertisements and packaging, their claim fails because the exhibits to Plaintiffs' complaint (i.e. the images of the product's packaging and instructions) "demonstrate that none of Unilever's statements made in marketing the Product were untrue, and any allegations to the contrary are trumped by the controlling language in the attachments." (Id.) In regard to this argument, Unilever cites Wintermute v. Discover Card Services, Inc., in which the district court dismissed a plaintiff's KCPA claim since the plaintiff's allegations were inconsistent with the exhibits that were attached to the complaint. 2008 WL 1772758, at *1 (W.D. Ky. Apr. 16, 2008).

Plaintiffs respond that in their complaint, they sufficiently identified specific representations that were false, misleading, or otherwise deceptive. Plaintiffs also respond that their allegations are consistent with the complaint's exhibits. (See Pls.' Resp. [DN 10] 16-20.)

For the following reasons, the Court agrees with Plaintiffs. Plaintiffs have sufficiently pleaded that Unilever engaged in practices which were unfair, false, misleading, or deceptive.

For example, as discussed above, Plaintiffs have pleaded that Unilever represented that the product was a "smoothing" treatment—and that this statement was misleading because it was a "chemical hair straightener" and not a gentle conditioner. (Am. Compl. [DN 1-2] ¶¶ 1, 4, 46-47.) They also pleaded that Unilever represented that the product's effects would last no longer than 30 days—and that this statement was misleading because the product was a chemical straightener whose effects could be expected to last for months. (Id. ¶ 6.) Finally, Plaintiffs pleaded that Unilever represented that the product contained no formaldehyde and was safe—and that this statement was misleading since the product contained a chemical known to release formaldehyde upon its use. (Id. ¶¶ 5, 27.) The Court finds that these pleadings are sufficient allegations of false, misleading, or deceptive behavior to support Plaintiffs' KCPA claim.

Additionally, the Court finds that Plaintiffs' complaint contains other allegations of false, misleading, or deceptive behavior which support their KCPA claim because Plaintiffs have pleaded that after the product's introduction in late 2011, Unilever knew that consumers had complained that it caused significant hair loss and other adverse effects, yet still failed to warn consumers of those dangers. (Id. ¶ 8.) More specifically, Plaintiffs have alleged that: "Nowhere on the package labeling or on Unilever's websites or other marketing materials did Unilever warn Plaintiffs . . . that they were at risk of significant hair loss and/or scalp burns upon proper application of the Treatment." (Id. ¶ 7.) Further, Plaintiffs have pleaded that despite their recall of the product in May 2012, Unilever continued to advise consumers that the product was safe, claiming that it was recalled due to consumer misunderstanding of the product's appropriate use and application. (Id. ¶¶ 9-10.) The Court agrees with Plaintiffs that their KCPA claim can be based on Unilever's

alleged failure to disclose the product's defect and warn consumers of its risk of producing adverse effects.

In this respect, the Court again turns to <u>Reid</u>. 2013 WL 4050194, at *15-17. In that case, the court declined to dismiss the plaintiffs' claim that Unilever violated state consumer fraud and deceptive business practices acts to the extent that the claim was based on Unilever's failure to disclose and warn of the hair product's defective nature. <u>Id.</u> In so doing, the Court held that the plaintiffs had "sufficiently alleged that Unilever acted with the requisite knowledge in failing to disclose the risks of using the Hair Treatment" because the plaintiffs had "alleged that Unilever knew that the Hair Treatment could cause substantial hair loss as early as December 2011 . . . ." <u>Id.</u> at *16. Here, the Court finds that a similar conclusion is warranted. Any holding to the contrary would ignore the fact that the KCPA has been interpreted "broadly to effectuate its purpose . . . ." <u>Corder v. Ford Motor Co.</u>, 285 Fed. App'x 226, 228 (6th Cir. 2008).

The Court rejects Unilever's argument that Plaintiffs' KCPA claim must be dismissed since Plaintiffs have failed to plead a causal connection between Unilever's allegedly deceptive marketing and Plaintiffs' claimed damages. (Def.'s Mem. [DN 8-1] 10.) Plaintiffs have alleged that they "purchased and used the Treatment" as a "proximate result of the above-described Consumer Protection Act violations." (Am. Compl. [DN 1-2] ¶ 92.) They have also alleged that they purchased the product due to Unilever's representations about it—and that its undisclosed corrosive nature damaged them in the form of significant hair loss and scalp burns. (<u>Id.</u> ¶¶ 1, 35, 46-47, 57-62, 80.) Nothing more is required at this stage of the litigation. <u>See Corder v. Ford Motor Co.</u>, 869 F. Supp. 2d 835, 838-39 (W.D. Ky. 2012) (denying a motion to dismiss and stating that "by its very terms, the KCPA requires only that the plaintiff prove that he or she

suffered an ascertainable loss that was the result of the allegedly deceitful practice of the defendant" (internal citations omitted)).

The Court similarly rejects Unilever's argument that Plaintiffs' KCPA claim must be dismissed because Unilever warned consumers of circumstances under which the product should not be used, and because Unilever specifically warned that use by some consumers would "result in hair breakage." (See Def.'s Reply [DN 14] 10.) As the court noted in Reid, whether these warnings were sufficient to warn consumers that hair loss, scalp burns, and other adverse effects could result from proper application of the product is a fact question. It is improper to resolve such a question on a motion to dismiss. See Reid, 2013 WL 4050194, at *17. At this early stage of the litigation, it is sufficient that Plaintiffs have adequately pleaded the elements of a KCPA claim.

## 2. Privity of Contract

Although Plaintiffs have sufficiently alleged facts supporting a KCPA violation, the Court must still address Unilever's argument that Plaintiffs lack standing to maintain a KCPA claim because they are not in privity with Unilever. To maintain a private action under the KCPA, a plaintiff must generally be in privity of contract with the defendant. See Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc., 24 F. Supp. 2d 755, 772-73 (W.D. Ky. 1998) (noting that the KCPA "requires that 'privity of contract exist between the parties . . . .'" (citation omitted)). The statute typically cited for the KCPA's privity requirement is K.R.S. § 367.220. It states:

> *Action for recovery of money or property; when action may be brought*—(1) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property . . . may bring an action . . . in the Circuit Court in which the seller or lessor resides . . . .

K.R.S. § 367.220(1). Kentucky courts have held that this language "plainly contemplates an action by a purchaser against his immediate seller." Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.,

836 S.W.2d 907, 909 (Ky. App. 1992). Plaintiffs concede that this is the general rule. (Pls.'
Mem. [DN 10] 22.) However, Plaintiffs maintain that the privity requirement "simply does not
apply to Plaintiffs' KCPA claims in light of the express representations alleged." (Id.)

Plaintiffs cite Skilcraft Sheetmetal, Inc. to support their position. In that case, Kentucky's
Court of Appeals analyzed whether K.R.S. § 367.220 allows an action by a person who has not
purchased or leased goods from the person he claims to have violated the KCPA. 836 S.W.2d at
909. The Court held that a subsequent purchaser could not "maintain an action against a seller
with whom he did not deal **or who made no warranty for the benefit of the subsequent
purchaser**." Id. (emphasis added). The Court went on to explain that while privity is generally
required to assert a cause of action under the KCPA, it found certain situations "distinguishable .
. . such as that presented in Ford Motor Co. v. Mayes, Ky. App., 575 S.W.2d 480 (1978), where
the defendant (Ford Motor Company) provides warranties to the ultimate purchaser to repair the
item purchased." Id. Plaintiffs rely on this language to argue that since Unilever made valid express
warranties for the benefit of Kentucky consumers, they may bring a KCPA cause of action.
Unilever argues that this argument is meritless because Plaintiffs' express warranty claim fails.

The Court agrees with Plaintiffs. As discussed above, Plaintiffs have sufficiently alleged
that Unilever made valid express warranties for Plaintiffs' benefit. Therefore, the Court finds that
the exception outlined in Skilcraft Sheetmetal, Inc. is applicable. Plaintiffs can maintain a KCPA
claim against Unilever despite the absence of a direct buyer-seller relationship. Therefore,
Unilever's motion to dismiss is **DENIED** as to Plaintiffs' KCPA claim in Count II.

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA") (COUNT III)

In Count III of their Complaint, Plaintiffs allege that Unilever violated the MMWA. (Am.
Compl. [DN 1-2] ¶¶ 93-98.) Plaintiffs' MMWA cause of action is based entirely on "Unilever's
breach of warranties as set forth [in the Complaint]." (Id. ¶ 98.) In this case, the parties agree that

the elements of an MMWA claim "mirror those required for state law warranty claims." Peacock v. Damon Corp., 458 F. Supp. 2d 411, 417 (W.D. Ky. 2006). Thus, Unilever argues that Plaintiffs' MMWA claim fails for the same reasons as their express warranty claim. Plaintiffs counter that their MMWA claim survives for the same reasons as their express warranty claim.

The Court has found that Plaintiffs have sufficiently pleaded an express warranty claim. Therefore, the Court holds that Plaintiffs have also sufficiently pleaded an MMWA claim. Unilever's motion to dismiss is **DENIED** as to Plaintiffs' MMWA claim in Count III.

### PRODUCTS LIABILITY: STRICT LIABILITY (COUNT V)

In Count V of their Complaint, Plaintiffs allege that Defendants "produced, manufactured, designed, marketed and/or distributed [a] Product that was defective in design . . . ." (Am. Compl. [DN 1-2] ¶ 110.) In addition, Plaintiffs allege that the product was defective due to inadequate warnings. (Id. ¶¶ 113-14.) According to Plaintiffs, when the product left the hands of Defendants, "it was unreasonably dangerous, more dangerous than an ordinary consumer would expect without concomitant accurate information and warnings accompanying the product." (Id. ¶ 112.)

Unilever argues that Count V must be dismissed under Fed. R. Civ. P. 12(b)(6) since these allegations are insufficient under Kentucky law to establish either a design defect claim or an informational defect claim. Plaintiffs respond that the complaint contains sufficient allegations. The Court will consider the design defect claim; it will then address the informational defect claim.

### 1. Design Defect

Defendants concede that Plaintiffs have alleged that the product contained an "inherent defect" that "caused significant hair loss and scalp burns upon proper application." (Def.'s Mem. [DN 8-1] 12 (citing Am. Compl. [DN 1-2] ¶ 53).) However, Defendants maintain that Plaintiffs' complaint fails to show **how** the product was defective. According to Defendants, Plaintiffs have simply alleged that since their hair was damaged, the product must be defective. (See id.; Def.'s

Mem. [DN 9-1] 1.) They maintain that this is not sufficient. See Mills v. Bristol-Myers Squibb Co., 2011 WL 3566131, at *1-2 (D. Ariz. Aug. 12, 2011) (holding that allegations that a drug caused a plaintiff to begin hemorrhaging were insufficient to state a claim where the plaintiff failed to plead how the drug was defective); Altman v. HO Sports Co., Inc., 2009 WL 4163512, at *1, 8 (E.D. Cal. Nov. 23, 2009) (holding that allegations that a plaintiff was injured while using a defendant's wakeboard bindings were insufficient to state a claim absent any factual allegations identifying "what aspect of the [bindings] makes their design . . . defective").

The Court finds, however, that Defendants' argument is off-point. In this case, Plaintiffs have alleged facts which constitute more than a simple argument that "the product was defective because our hair was damaged." Instead, Plaintiffs have sufficiently alleged how the product was defective. Plaintiffs have alleged that the product contained Thioglycolic Acid and that "the pH level and concentration of Thioglycolic Acid in the [product] rendered it dangerous and unsafe for sale as an over-the-counter hair 'smoothing' product." (Am. Compl. [DN 1-2] ¶ 1.) Plaintiffs have also alleged that "Thioglycolic Acid is so corrosive that, if left on too long, it will dissolve the bonds holding hair together until the hair strand is transformed into a jelly-like substance that can be wiped away." (Id. ¶ 46.) The Court finds that these allegations offer sufficient detail and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Moreover, although Defendants criticize Plaintiffs for failing to identify "the levels of thioglycolates in the Product, how that compares to other hair products containing the same ingredient, or in what amounts it is purportedly unsafe for use," (Def.'s Mem. [DN 8-1] 13), the Court finds that such allegations are not required. Plaintiffs have alleged that the product was in a defective condition and unreasonably dangerous such that Unilever, being fully aware of the

24

product's risks, should not have put it on the market. (See Am. Compl. [DN 1-2] ¶¶ 107-15.) Nothing more is required. See Tobin v. Astra Pharm. Prods., Inc., 993 F.2d 528, 537 (6th Cir. 1993) (noting that "the question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market'"); see also Fed. R. Civ. P. 8(a) (noting that under the Federal Rules, only a "short and plain statement of the claim" is required).

Defendants also argue that the Court must dismiss Plaintiffs' design defect claim because Kentucky law requires a plaintiff to prove that a feasible, safer alternative design was available to the manufacturer when it made the product. See Toyota Motor Corp. v. Gregory, 136 S.W.3d 35, 42 (Ky. 2004) (noting that "Kentucky law . . . stands for the proposition that design defect liability requires proof of a feasible alternative design"). According to Defendants, Plaintiffs have not alleged the existence of a feasible, safer alternative; thus, their claim must be dismissed.

Plaintiffs make three counter-arguments. First, they argue that proof is not a requirement at the motion to dismiss stage. Second, they argue that some Kentucky opinions have expressed lingering doubt as to whether it is appropriate to apply the feasible alternative design requirement to non-crashworthiness products liability cases such as this. See Hopkins v. Ford Motor Co., 2011 WL 5525454, at *3 (W.D. Ky. Nov. 14, 2011) (noting that "there may be some lingering question as to whether a reasonable alternative is a necessary element for all design defect claims"). Third, Plaintiffs argue that if the feasible alternative design requirement is applicable in this case, they have adequately pleaded an alternative design sufficient to withstand Defendants' motions to dismiss. In this regard, Plaintiffs urge the Court to consider Garlock Sealing Techs., LLC. v. Robertson, 2011 WL 1811683 (Ky. App. May 13, 2011). There, the court found that a key piece of evidence supporting the plaintiff's design defect case was the defendant's own advertisement for asbestos-free products. Id. at *2-3. Plaintiffs argue that here, Defendants' advertisement that

its product contained no formaldehyde similarly supports their design defect claim. According to Plaintiffs, they have offered evidence of a safer, feasible alternative design: namely, a product containing no formaldehyde or formaldehyde-releaser.

The Court agrees with Defendants that courts in Kentucky generally require a plaintiff to prove that a safer, feasible design alternative was available to the manufacturer when it made the product. See Cummins v. BIC USA, Inc., 835 F. Supp. 2d 322, 326 (W.D. Ky. 2011) ("Both parties agree that in Kentucky, in order to prove a product is 'unreasonably dangerous' as designed, a plaintiff is required to produce competent evidence 'of a feasible alternative design' that would have prevented the injury."); McCoy v. Gen. Motors Corp., 47 F. Supp. 2d 838, 840 (E.D. Ky. 1998) (granting the defendant's summary judgment motion since the plaintiff failed to "offer proof of an alternative safer design, practicable under the circumstances"). However, as Plaintiffs note, **proof** of an alternative design is not a requirement at this stage of the proceedings. Instead, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must only "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Glassner v. R.J. Reynolds Tobacco Co., 223 F.3d 343, 346 (6th Cir. 2000) (quotation omitted).

In this case, the Court finds that Plaintiffs' complaint contains such allegations. Plaintiffs have alleged that Defendants advertised that the hair product contained no formaldehyde, despite the fact that it contained a formaldehyde-releaser. (Am. Compl. [DN 1-2] ¶ 5.) The Court finds that from this allegation, it can be inferred that a safer, feasible alternative design exists: namely, a product containing no formaldehyde or formaldehyde-releaser. Plaintiffs' complaint contains

sufficient allegations to survive Defendants' motions to dismiss.[2] Thus, Defendants' motions are **DENIED** as to Plaintiffs' design defect claim in Count V.

### 2. Informational Defect

Defendants next maintain that Plaintiffs have failed to sufficiently plead an informational defect claim. In this regard, Defendants argue that the exhibits to Plaintiffs' complaint (i.e. the images of the product's packaging and instructions) show that Unilever provided substantial warnings of the dangers of which it was aware. (See Def.'s Mem. [DN 8-1] 2-3, 14 (highlighting that Unilever's packaging and instructions warned that the product contained thioglycolates—and also warned that the product should not be used under certain conditions).) Defendants criticize Plaintiffs for failing to explain why these warnings were inadequate or how they rendered the product unreasonably dangerous. (Id. at 14.) Defendants also criticize Plaintiffs for failing to plead that their alleged injuries were proximately caused by the warnings. (Id.)

Under Kentucky law, to state an informational defect claim, a plaintiff must allege that: (1) the defendant had a duty to warn of the alleged dangers involved in using the product; (2) the lack of adequate warnings made the product defective and unreasonably dangerous; and (3) the lack of adequate warnings proximately caused the plaintiff's injuries. See Shea v. Bombardier Rec. Prods., Inc., 2012 WL 4839527, at *3 (Ky. App. Oct. 12, 2012). In this case, as Plaintiffs correctly highlight, they have adequately made these allegations.

Plaintiffs have alleged in their complaint that Defendants knew that the product contained a chemical that releases formaldehyde—and that Defendants knew that the product was causing hair loss, scalp burns, and other adverse effects. (Am. Compl. [DN 1-2] ¶¶ 27, 36.) Plaintiffs

---

[2] This conclusion is supported by Supreme Court precedent. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990) (holding that at the pleading stage, general factual allegations of injury resulting from a defendant's conduct will suffice for a motion to dismiss because the court "presumes that general allegations embrace those specific facts that are necessary to support the claim").

have also alleged that despite this knowledge, Defendants failed to warn consumers of these risks, making the product defective and unreasonably dangerous. (See id. ¶¶ 112-14.) In addition, Plaintiffs have alleged that as a direct result of the defective product, as marketed, they suffered injuries. (Id. ¶ 115.) These allegations are sufficient to support their informational defect claim. Thus, Defendants' motions are **DENIED** as to Plaintiffs' informational defect claim in Count V.

### PRODUCTS LIABILITY: NEGLIGENCE AND/OR GROSS NEGLIGENCE (COUNT IV)

In Count IV of their Complaint, Plaintiffs allege that Defendants were negligent and/or grossly negligent in the "development, testing, planning, design, marketing, sale and recall of the subject hair care Product offered for use by consumers." (Am. Compl. [DN 1-2] ¶ 101.) Defendants have moved to dismiss Count IV under Fed. R. Civ. P. 12(b)(6). Defendants argue that because Plaintiffs' negligence claim relies on the same factual assertions as their strict liability claim, and because those assertions fail to show that the hair product was defective, Plaintiffs' negligence claim necessarily fails. Likewise, Defendants argue that Plaintiffs' gross negligence claim must be dismissed because Plaintiffs have failed to allege that Defendants acted with the malice or willfulness required to state such a claim. (See Def.'s Mem. [DN 8-1] 14-15.) Plaintiffs respond that they have alleged sufficient facts to defeat Defendants' motions to dismiss.

To state a claim for negligent products liability, a plaintiff must allege a duty owed by the manufacturer, a breach of that duty, and damages proximately caused by that breach. See Shea, 2012 WL 4839527, at *4. Kentucky courts have held that "if a manufacturer has placed a defective product that is unreasonably dangerous in the market, it has violated its duty under a negligence standard and may be found strictly liable." Id. (citing Nichols v. Union Underwear Co., Inc., 602 S.W.2d 429, 433 (Ky. 1980)). Thus, like a claim for strict products liability, a claim for negligent products liability requires the plaintiff to establish that the product was defective and that it was the legal cause of the injury. Moreover, to rise to the level of gross negligence, a

plaintiff must show ordinary negligence accompanied by "wanton or reckless disregard for the lives, safety, or property of others." <u>Dortch v. Fowler</u>, 2007 WL 2757139, at *1 (W.D. Ky. Sept. 20, 2007) (citing <u>City of Middlesboro v. Brown</u>, 63 S.W.3d 179, 181 (Ky. 2001)). In this case, the Court agrees with Plaintiffs that their allegations suffice.

Plaintiffs have alleged that almost immediately upon introducing the product in late 2011, Defendants knew that the product was causing significant adverse effects but still failed to warn consumers. (Am. Compl. [DN 1-2] ¶¶ 7-8.) Additionally, Plaintiffs have alleged that Defendants owed Plaintiffs a duty to use due care—and that Defendants breached this duty by producing and distributing a defective product, failing to use sufficient quality control or perform adequate testing, and failing to adequately inform consumers of safety concerns. (<u>Id.</u> ¶¶ 101-04.) Finally, Plaintiffs have alleged that the product caused them damage—and that Defendants knew that the product presented an unacceptable risk to consumers that would result in damages. The Court finds that these allegations are sufficient to support a negligence and/or gross negligence claim. Thus, the Court finds that Defendants' motions to dismiss are **DENIED** as to Plaintiffs' claims in Count IV.

### UNJUST ENRICHMENT (COUNT VI)

In Count VI of their Complaint, Plaintiffs bring an unjust enrichment claim under Kentucky law. (Am. Compl. [DN 1-2] ¶¶ 116-20.) In this count, Plaintiffs allege that Defendants "have been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Treatment . . . ." (<u>Id.</u> ¶ 119.) Specifically, Plaintiffs allege that the retention of such revenues "is unjust and inequitable because Defendants manufactured a defective Product . . . ." (<u>Id.</u>) They also allege that "Unilever misrepresented the nature of the Product, misrepresented its ingredients, and knowingly marketed and promoted a dangerous and defective Product, which caused injuries to Plaintiffs and the Class because they would not have purchased the Treatment

based on the same representations if the true facts concerning the Product had been known." (Id.) Defendants argue that the Court must dismiss Count VI under Fed. R. Civ. P. 12(b)(6) because Kentucky law provides that the doctrine of unjust enrichment does not apply where a specific contract exists. Alternatively, Defendants argue that the Court must dismiss Count VI because Plaintiffs have failed to adequately plead their claim. (See Def.'s Mem. [DN 8-1] 15-16.)

Under Kentucky law, unjust enrichment "has no application in a situation where there is an explicit contract which has been performed." Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., 2010 WL 2696278, at *14 (Ky. App. July 9, 2010); see Codell Constr. Co. v. Commw. of Ky., 566 S.W.2d 161, 165 (Ky. App. 1977) (reaching the same conclusion). Defendants thus contend that to the extent Plaintiffs' unjust enrichment claim is based on the same conduct alleged in Plaintiffs' express warranty claim, their unjust enrichment claim must be dismissed. In response, Plaintiffs argue that "there is no specific contract in existence" as "Plaintiffs have not alleged a breach of contract claim." (Pls.' Mem. [DN 10] 29.) Plaintiffs also argue that under Fed. R. Civ. P. 8(d)(2), Plaintiffs are allowed to plead alternative claims. (Id.)

The Court first notes that contrary to Plaintiffs' argument, Plaintiffs have alleged in their complaint that there is a specific contract in existence. (See Am. Compl. [DN 1-2] ¶ 77 (alleging that Plaintiffs formed a contract with Unilever at the time they purchased the product and that "[t]he terms of that contract include the promises and affirmations of fact made by Unilever" through its marketing, advertising, and packaging").) Further, Kentucky law seems to suggest that breach of warranty claims sound in contract. See Nucor Corp. v. Gen. Elec. Co., 812 S.W.2d 136, 146 (Ky. 1991) ("Whether styled breach of warranty or breach of contract, the factual basis for the claim was the same."). Nevertheless, the Court agrees with Plaintiffs that their unjust enrichment claim may remain in the action; at this point in the proceedings, it must not be dismissed.

Fed. R. Civ. P. 8(d)(2) states that a party "may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . ." Fed. R. Civ. P. 8(d)(2). Case law suggests that Plaintiffs may allege both a breach of warranty claim and an unjust enrichment claim in their complaint. <u>See</u> <u>Holley Performance Prods., Inc. v. Keystone Auto. Operations</u>, 2009 WL 3613735, at *6 (W.D. Ky. Oct. 29, 2009) (denying a defendant's motion to dismiss, stating that "at this early stage of litigation, it is proper for [the plaintiff] to allege both its claim for breach of contract and unjust enrichment"); <u>*In re*</u> <u>Bridgestone/Firestone, Inc. Tires Prods. Liability Litig.</u>, 155 F. Supp. 2d 1069, 1116 (S.D. Ind. 2001) (declining to dismiss an unjust enrichment claim when it was included with a breach of warranty claim). Thus, the Court concludes that it would be premature for it to dismiss Plaintiffs' unjust enrichment claim at this point.

The Court notes that Defendants cite <u>Shane v. Bunzl Distrib. USA, Inc.</u>, 200 Fed. App'x 397 (6th Cir. 2006), to support their argument that Plaintiffs' unjust enrichment claim must still be dismissed. There, the court affirmed a district court's dismissal of an unjust enrichment claim because "[t]he facts alleged in Shane's unjust-enrichment claim mirror[ed] those alleged in his breach-of-contract claim." <u>Id.</u> at 404. However, in that case, the court had already determined that there was explicit contract between the parties, thus negating the plaintiff's ability to have a successful claim for equitable relief. <u>See</u> <u>id.</u> Here, by contrast, the Court has not yet determined whether there was a valid and enforceable contract between Unilever and Plaintiffs. Further, the Court need not make such a determination at this juncture. Instead, the Court's duty is simply to determine whether Plaintiffs' claims are sufficiently pleaded. "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, the Court finds that Plaintiffs are permitted to allege their breach of warranty and unjust enrichment claims.

Defendants next argue that Plaintiffs' unjust enrichment claim should be dismissed under Fed. R. Civ. P. 12(b)(6) since the complaint "fails adequately to plead a cause of action." (Def.'s

Mem. [DN 8-1] 15.) To adequately state an unjust enrichment claim in Kentucky, a plaintiff must allege: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." Pixler v. Huff, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011) (quoting Guerin v. Fulkerson, 354 S.W.3d 161, 165 (Ky. App. 2011)). Defendants argue that Plaintiffs have failed to plead these allegations—and that any such allegations are contradicted by the complaint's exhibits (i.e. the images of the product's packaging and instructions). (See Def.'s Mem. [DN 8-1] 15-16.)

The Court finds, however, that Plaintiffs have sufficiently pleaded facts to support their unjust enrichment claim. As noted above, Plaintiffs have alleged that Defendants were "unjustly enriched in retaining the revenues derived from Class Members' purchases of the Treatment . . . ." (Am. Compl. [DN 1-2] ¶ 119.) Plaintiffs have also alleged that the retention of such revenues "is unjust and inequitable because Defendants manufactured a defective Product . . . ." (Id.) Also, Plaintiffs have alleged that "Unilever misrepresented the nature of the Product, misrepresented its ingredients, and knowingly marketed and promoted a dangerous and defective Product, which caused injuries to Plaintiffs and the Class because they would not have purchased the Treatment based on the same representations if the true facts concerning the Product had been known." (Id.) These allegations suffice. Defendants' motions are **DENIED** as to Plaintiffs' unjust enrichment claim in Count VI.

The Court notes that the Northern District of Illinois reached a similar conclusion in Reid. There, the court denied Unilever's motion to dismiss the plaintiffs' unjust enrichment claim, noting:

> [T]here is a dispute over the existence of a contract and it is uncertain whether Plaintiffs will prevail on their breach of express warranty claims in Count I. Furthermore, to the extent that Reid's unjust enrichment claim is based on the same conduct underlying what survives of her [consumer fraud] claims—specifically, Unilever's alleged failure to disclose and warn—it remains viable.

2013 WL 4050194, at *24. Here, as discussed above, a similar conclusion is warranted.

#### IV. PLAINTIFFS' MOTION FOR ORAL ARGUMENT [DN 16]

The Court finds no need to schedule an oral argument because the parties have adequately addressed the pertinent issues in their briefs. Plaintiffs' motion for oral argument is **DENIED**.

#### V. PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM [DN 23]

Plaintiffs have filed a motion for leave to file a supplemental memorandum in opposition to Defendants' motions to dismiss. (Pls.' Mot. for Leave [DN 23].) This motion is **GRANTED**.

#### VI. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Unilever's Motion to Dismiss the First Amended Complaint [DN 8] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Conopco's Motion to Dismiss the First Amended Complaint [DN 9] is **DENIED**.

**FURTHER** that Plaintiffs' Motion for Oral Argument [DN 16] is **DENIED**.

**FURTHER** that Plaintiffs' Motion for Leave to File Supplemental Memorandum [DN 23] is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

September 30, 2013

cc: counsel of record